# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SHANA K.,[1]                                   )
                                               )
                    Plaintiff,                 )
                                               )         CIVIL ACTION
v.                                             )
                                               )         No. 18-2233-JWL
NANCY A. BERRYHILL,                            )
Acting Commissioner of Social Security,        )
                                               )
                    Defendant.                 )
_____)


## MEMORANDUM AND ORDER


Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.    Background

_____

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff argues that the ALJ erred in finding that Plaintiff can perform past relevant work as a reservation clerk, erred in relying on testimony of the vocational expert (hereinafter VE) which was inconsistent with the Dictionary of Occupational Titles (DOT), and erroneously discounted the treating source opinions of Dr. Belcher and Dr. Latinis in favor of the non-examining source opinion of Dr. Hughes who reviewed the record at the reconsideration level.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record,

nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process--determining at step four whether, considering the RFC assessed, claimant can perform her past

relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court addresses each error alleged by Plaintiff in the order it would present when applying the sequential evaluation process. However, Plaintiff presented new evidence to the Appeals Council along with her request for review of the ALJ's decision. She argues that the Appeals Council erred in its consideration of that new evidence, and the court must first address that issue.

## II.    Evidence Presented for the First Time to the Appeals Council

Dr. Latinis prepared a "Physician's Residual Functional Capacity Form 9" on August 7, 2017, over two months after the ALJ's decision issued in this case, and Plaintiff presented it to the Appeals Council in support of her request for review of the ALJ's decision. (R. 9) (all caps omitted). The Appeals Council denied Plaintiff's request for review of the ALJ's decision and mailed a "Notice of Appeals Council Action" dated March 12, 2018. (R. 1) (all caps and bolding omitted). The Council noted that Plaintiff had submitted Dr. Latinis's opinion dated August 7, 2017, and explained its consideration of that opinion:

> The Administrative Law Judge decided your case through May 31, 2017. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before May 31, 2017.
>
> If you want us to consider whether you were disabled after May 31, 2017, you need to apply again.

(R. 2).

The Commissioner recently promulgated a regulation changing the requirements for consideration of requests for review of an ALJ's decision. Final Rule: Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process, 81 Fed. Reg. 90,987 (Dec. 16, 2016) ("compliance is not required until May 1, 2017"), codified at, 20 C.F.R. §§ 404.970, 416.1570 (2018) (effective Jan. 17, 2017). This is the regulation applied by the Council in deciding Plaintiff's request for review. (R. 1) ("we will review your case for any of the following reasons: … We receive additional evidence that you show is new, material, and relates to the period on or before the date of the hearing decision. You must also show there is a reasonable probability that the additional evidence would change the outcome of the decision. You must show good cause for why you missed informing us about or submitting it earlier.").

The regulation provides that the Appeals Council will review a case if, among other requirements, it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5) (2018). It also provides that

> If you submit additional evidence that <u>does not relate to the period on or before the date of the administrative law judge hearing decision</u> as required in paragraph (a)(5) of this section, … the Appeals Council will send you a notice that explains why <u>it did not accept the additional evidence</u> and advises you of your right to file a new application.

20 C.F.R. § 404.970(c) (2018) (emphases added).

That is precisely what happened here.  The Appeals Council did not accept Dr. Latinis's RFC form because it "does not relate to the period at issue."  (R. 2) (quoted above).  Therefore, the Council did not make the doctor's form a part of the administrative record in this case, but merely included it among the Appeals Council's correspondence.  (R. 1-11).  This conclusion is confirmed by the fact that Plaintiff's counsel also included a representative brief with his request for review, and the Appeals Council issued an "Order of the Appeals Council" noting that it had received that additional evidence and made it a part of the record.  (R. 6) (naming Exhibit 15B, "Request for review with representative brief by Roger Driskill, dated February 13, 2018 (6 pages).") (all caps and bolding omitted).  Exhibit 15B has in fact been included within the "B" section of the administrative record, but Dr. Latinis's opinion has not been included as an exhibit within the "F" section of the administrative record.  (R. 210-15).  Because Dr. Latinis's opinion was not accepted by the Appeals Council, it is not a part of the "transcript of the record" upon which the court may rely in "affirming, modifying, or reversing the decision of the Commissioner of Social Security."  42 U.S.C. § 405(g) (sentence four).

### A.    Arguments

Plaintiff argues that the Appeals Council summarily rejected the opinion of Dr. Latinis because it did not relate to the period at issue, but that, if properly considered the opinion does relate to that period. (Pl. Br. 26). She cites Dr. Latinis's statement that the limitations presented in his opinion have been effective "since at least 2012" (R. 11), and argues that the opinion is a proper retrospective opinion relating back to within the period at issue. (Pl. Br. 26 & n.3) (citing Andersen v. Astrue, 2009 WL 886237, at *9 (10th Cir. 2009); Gutierrez v. Colvin, 67 F. Supp. 3d 1198, 1203 (D. Colo. 2014); and Hoffman v. Apfel, 62 F. Supp. 2d 1204, 1212 (D. Kan. 1999)). She argues that "[r]eversal is required where the Appeals Council fails to consider the evidence submitted." Id. In the circumstances presented here, Plaintiff's argument constitutes a request pursuant to the sixth sentence of 42 U.S.C. § 405(g) that the court "order additional evidence to be taken before the Commissioner of Social Security."

The Commissioner understands Plaintiff to argue both that the Appeals Council erred in finding Dr. Latinis's opinion does not relate to the period at issue, and that the Council erred in failing to provide an in-depth analysis of Dr. Latinis's opinion. (Comm'r Br. 9). She responds that "Plaintiff is incorrect on both counts." Id. She points out that the regulation requires the Appeals Council to review the ALJ's decision "if, in addition to meeting other requirements, the evidence relates to the period on or before the date of the hearing decision, and there is a reasonable probability that it would change the outcome of the decision." Id. (citing 20 C.F.R. § 404.970(a)(5)). She notes that the Council found Dr. Latinis's opinion does not relate to the period at issue and does not affect the question of disability on or before the date of the ALJ's decision. Id. at 9-10.

The Commissioner acknowledged that Dr. Latinis stated his limitations had been present since 2012, she summarized his treatment records since December 2011, and she suggested that his "unremarkable [treatment] findings" are inconsistent with the functional limitations opined. (Comm'r Br. 10).

The Commissioner then argued:

> While the medical source statement completed by Dr. Latinis <u>appears to relate</u> to the period on or before the May 31, 2017 ALJ decision, Plaintiff cannot satisfy the other requirements of 20 C.F.R. § 404.970(a)(5). In particular, Plaintiff has not shown that there is a reasonable probability that the additional evidence would change the outcome of the decision.

<u>Id.</u> (emphasis added). She implies that any error in the Appeals Council's failure to articulate that Plaintiff has not shown that there is a reasonable probability that Dr. Latinis's opinion would change the outcome, is harmless because it is Plaintiff's burden to demonstrate that probability—which she cannot do. <u>Id.</u> at 11. The Commissioner concludes by arguing that "the Appeals Council was not required to weigh this opinion or make factual findings" because "'nothing in the statutes or regulations' requires the Appeals Council to provide express analysis of evidence submitted to it, including opinions from treating physicians." <u>Id.</u> (quoting <u>Vallejo v. Berryhill</u>, 849 F.3d 951, 955–56 (10th Cir. 2017)). She argues, "The only option for this Court is to 'conduct a substantial-evidence review by assessing the entire agency record,' including Dr. Latinis's opinion." <u>Id.</u> (quoting <u>Vallejo</u>, 849 F.3d at 956).

In her Reply Brief, Plaintiff reiterates the arguments in her Social Security Brief, and argues that the Appeals Council "never reached the issue of whether Dr. Latinis'[s] opinion would change the outcome of the decision as it ended its assessment of Dr.

Latinis'[s] opinion after it erroneously concluded that, because the opinion was dated after the ALJ's decision, it did not relate to the relevant time." (Reply 8). She argues that, consequently, the question of whether Dr. Latinis's opinion might change the outcome of the decision is a factual finding which must be made by the Commissioner in the first instance. Id. She argues that the Commissioner's reliance on Vallejo is misplaced because in Vallejo, the Appeals Council accepted the additional evidence at issue there and considered it in denying review, whereas here the Council determined the additional evidence was not relevant and did not consider it. Id. at 9.

### B. Analysis

The arguments of both Plaintiff and the Commissioner appear to misunderstand the law, the regulations, and the posture of this case as they relate to Dr. Latinis's opinion presented for the first time to the Appeals Council. As noted above, the Appeals Council did not accept Dr. Latinis's opinion because it found the opinion did not relate to the period at issue before the ALJ. Therefore, that opinion is not a part of the transcript of the record before the Commissioner and may not be considered by this court in judicial review of the decision at issue. Consequently, Plaintiff is correct that the holding of the court in Vallejo does not apply here because in Vallejo, the Appeals Council accepted the additional evidence at issue there and it became a part of the record to be considered by the court on judicial review. 849 F.3d at 954 and n.1.

However, sentence six of 42 U.S.C. § 405(g) provides that the "court ... may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that

there is good cause for the failure to incorporate this evidence in a prior proceeding." As opposed to the sentence four remand at issue in <u>Vallejo</u>, "[s]entence-six remands are interlocutory and non-appealable because the district court retains jurisdiction and remands solely for consideration of new evidence that wasn't before the Commissioner, and the parties must then return to court to obtain a final judgment." <u>Vallejo</u>, 849 F.3d at 954 (citing <u>Melkonyan v. Sullivan</u>, 501 U.S. 89, 102 (1991)).

Because Plaintiff seeks remand for consideration of the new evidence <u>not accepted</u> by the Appeals Council, the court must consider whether remand is appropriate pursuant to the authority granted by sentence six of the statute. If good cause for the failure to incorporate this evidence in a prior proceeding is shown, it must be determined whether "the new evidence would have changed the Commissioner's decision had it been before h[er]." <u>Hargis v. Sullivan</u>, 945 F.2d 1482, 1493 (10th Cir. 1991). Implicit in the materiality requirement is that "the proffered evidence relate to the time period for which the benefits were denied." <u>Hargis</u>, 945 F.2d at 1493. <u>See also</u> <u>Henderson v. Dept. of Health and Human Servs.</u>, No. 93-6264, 1994 WL 18076, at *1-2 (10th Cir. Jan. 24, 1994). The requirements for introduction of additional evidence may be summarized as follows: (1) the proffered evidence must be "new" and not merely cumulative of what is already in the record; (2) the proffered evidence must be material, that is, relating to the time period for which benefits were denied, and offering a reasonable possibility of changing the Commissioner's decision; and (3) the claimant must show good cause for the failure to obtain and present the evidence at the prior hearing. <u>Tirado v. Bowen</u>, 842 F.2d 595, 597 (2nd Cir. 1988).

The second requirement, materiality, is the only one placed at issue by the parties. Although the court questions whether Dr. Latinis's opinion properly relates to the time at issue, the Commissioner accepts that characterization and does not provide any reason to find otherwise. Therefore, the determinative question here regarding sentence six remand is whether Dr. Latinis's opinion offers a reasonable possibility of changing the final decision below. The court finds that it does not.

Plaintiff's only argument in this regard is that it "is a factual finding which was to be made by the Appeals Council," but was never reached by the Council, and the case must be remanded. (Reply 8). Plaintiff is correct in so far as her statement demonstrates the Council did not accept Dr. Latinis's opinion, finding it does not relate to the period at issue, and did not reach the issue of probability of changing the ALJ's decision. However, because Plaintiff seeks a sentence six remand, the court is required to make an independent determination whether the opinion is material--which includes a determination whether it offers a reasonable possibility of changing the decision below.

Here, the ALJ provided a fair summary of all the record evidence--which included consideration and a summary of all of Dr. Latinis's treatment records. (R. 19-23). He noted that Dr. Latinis began treating Plaintiff before her alleged onset of disability, that Plaintiff did not see Dr. Latinis between July 2013 and February 2015 because of a lack of insurance, and that her condition had worsened during the interim. Id. at 20. He noted that Dr. Latinis restarted Plaintiff on Stelara and she improved thereafter. Id. at 21-22. The ALJ accorded great weight to the opinion of the state agency medical consultant, Dr. Hughes, because he is a program physician "well-versed in the assessment of

functionality as it pertains to the disability provisions of the Social Security Act and Regulations," because the opinion is consistent with the objective medical evidence and with the findings on examination, because the use of Stelera provided improvement, and because Dr. Hughes's opinions are consistent with Plaintiff's obesity. Id. at 22. The ALJ accorded little weight to the treating source opinion of Dr. Belcher because her "opinions did not include significant mention of objective findings in support," she is a family care provider, not a specialist, her opinion is inconsistent with the objective medical evidence, the functional limitations she opined are not supported by physical examinations, and her opinion of limited employment capacity is an opinion on an issue reserved to the commissioner and is inconsistent with the record evidence. Id. at 23. And, as Plaintiff argues repeatedly, Dr. Latinis's opinion is, at least generally, consistent with Dr. Belcher's opinion. (Pl. Br. 26) (Reply 9, 10). Considering these facts, the court finds no reasonable possibility that Dr. Latinis's opinion would change the decision below. Remand pursuant to sentence six is not appropriate, and the court must continue with its judicial review and consider the other errors alleged by Plaintiff.

## III.   Medical Opinions

As noted above, Plaintiff claims the ALJ erroneously discounted the treating source opinions of Dr. Belcher and Dr. Latinis in favor of the non-examining source opinion of Dr. Hughes, who reviewed the record at the reconsideration level. To the extent Plaintiff's argument rests upon the August 2017 opinion of Dr. Latinis presented for the first time to the Appeals Council, that opinion is not a part of the administrative record and as such may not be considered by this court in its judicial review of the

decision below. Moreover, the court has determined that remand pursuant to the sixth sentence of 42 U.S.C. § 405(g) for that evidence to be taken by the Commissioner is not appropriate in this case. Therefore, if Plaintiff desires that opinion to be considered by the Commissioner, it will be necessary for her to "file a new claim for disability insurance benefits" as suggested by the Appeals Council. (R. 2). Nevertheless, Dr. Latinis also provided an opinion dated January 27, 2012, which is a part of the administrative record in this case (R. 719) and the court will consider that opinion in its judicial review of the decision below.

### A.    The Parties' Arguments

Plaintiff points out that "[t]he ALJ's RFC as to Plaintiff's physical functional limitations is nearly identical to that of Dr. Hughes, the only opinion to which the ALJ gave 'great' weight." (Pl. Br. 20). She argues that Dr. Hughes's opinions are not substantial evidence because, as a state agency physician who reviewed the record, he is a nonexamining source whose opinions are entitled to the least weight. Id. at 20-21. She argues that Dr. Hughes's opinion was issued almost two years before the ALJ issued his decision and without benefit of the intervening evidence, suggesting the opinion is stale. Id. at 21. She argues the functional limitations opined by Dr. Hughes were due only to anemia, obesity, and a compromised immune system, which is inconsistent with the ALJ's finding of limitations due to severe psoriatic arthritis. Id.

She argues that the ALJ should have considered that although Dr. Belcher's and Dr. Latinis's opinions were rendered three years apart, they were consistent with each other. (Pl. Br. 21). Plaintiff claims the ALJ did not address any of the regulatory factors

13

for evaluating medical opinions and did not accord Dr. Belcher's and Dr. Latinis's opinions the deference due treating source opinions. Id. at 22-23. She attacks the reasons given by the ALJ to discount the treating source opinions and argues that they are not legitimate reasons, and that the ALJ substituted his own "medical expertise" over that of a treating physician. Id. at 23-25.

The Commissioner argues that the ALJ reasonably evaluated the opinion evidence, that he provided reasons for his evaluation, and the record evidence supports his finding. (Comm'r Br. 5-6). She contends that Plaintiff's arguments are not supported by the record evidence. Id. at 7-8. She argues

> that if the ALJ's decision was based solely on Dr. Hughes's opinion, as Plaintiff implies, then that decision would lack substantial evidence. But in formulating Plaintiff's RFC, the ALJ relied not just on Dr. Hughes's opinion, but also the various examination results detailed [in the Commissioner's Brief], along with the treatment Plaintiff received, the analysis of several other opinions in the record, Plaintiff's testimony, and statements from several lay witnesses and others. Since Dr. Hughes's opinion was one piece of evidence, among many, that supported the ALJ's decision, Plaintiff fails to show any error in that decision.

Id. at 8-9 (citation to the record omitted).

In her Reply Brief, Plaintiff explains how she views the evidence differently than does the Commissioner and reiterates her arguments regarding the ALJ's evaluation of Dr. Hughes's opinion. (Reply 4-7). She argues that "Dr. Hughes wholly ignored Plaintiff's psoriatic arthritis," and the ALJ "included no additional limitations in the RFC stemming from the 'severe' psoriatic arthritis." (Reply 6). She explains how in her view a proper consideration of the evidence would result in according Dr. Belcher's opinion greater weight. Id. at 6-7.

## B.     Standard for Evaluating Medical Opinions

For claims filed before March 17, 2017, as was Plaintiff's claim in this case, "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources[2] that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (2017). Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, <u>all</u> medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. <u>Id.</u> §§ 404.1527(c), 416.927(c); <u>Soc. Sec. Ruling</u> (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2018). A physician who has treated a patient frequently over an extended period (a treating source) is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." <u>Doyal v. Barnhart</u>, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion."

---

[2]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. §§ 404.1502, 416.902 (2016).

"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. <u>Id.</u>

"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion. <u>Id.</u>

Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  But, opinions of

nontreating sources are generally given more weight than the opinions of nonexamining

sources who have merely reviewed the medical record.  Robinson v. Barnhart, 366 F.3d

1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987)

(citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker,

695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963

(3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of

the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by

medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not

inconsistent with the other substantial evidence in [claimant's] case record, [the

Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 110-14

(Supp. 2018) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating

source's medical opinion.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003)

(citing SSR 96-2p).  The ALJ determines "whether the opinion is 'well-supported by

medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300

(quoting SSR 96-2p).  If well-supported, the ALJ must confirm that the opinion is also

consistent with other substantial evidence in the record.  Id.  "[I]f the opinion is deficient

in either of these respects, then it is not entitled to controlling weight."  Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the regulatory factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. Id. 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### C. The ALJ's Findings

As noted above, the ALJ considered and summarized all the evidence in this case, including Plaintiff's allegations of symptoms, the medical evidence, and the opinion evidence. (R. 18-24). He noted that Dr. Latinis began treating Plaintiff before her alleged onset of disability, that Plaintiff did not see Dr. Latinis between July 2013 and

February 2015 because of a lack of insurance, and that her condition had worsened during the interim. Id. at 20. He noted that Dr. Latinis restarted Plaintiff on Stelara and she improved thereafter. Id. at 21-22.

The ALJ discounted Plaintiff's allegations of symptoms resulting from her impairments because he found them inconsistent with the medical evidence and other evidence in the record. Id. at 21. Specifically, he found:

> The medical evidence, however, does not support the severity of the allegations. The record certainly supports a diagnosis of psoriatic arthritis. However, the record generally showed only sporadic findings that were typically mild. On the alleged onset date, she had some swelling in the right wrist and hand, with decreased grip strength, but they were improving (Exhibit 3F/4-6). The next month, an examination showed only an area of edema (Exhibit 5F/ 14-15). The claimant was sent for physical therapy, but she did not return after the initial evaluation and was discharged. Another examination in 2013 was unremarkable (Exhibit 5F/7). The record then showed a gap in treatment until 2015. She did have a consultative examination in 2014, which showed only some psoriatic plaque on her left ankle. Grip strength was equal in both hands, she had no joint tenderness, effusion, or limited motion, and she could move around (Exhibit 9F/3-4). Through that point, the record certainly did not support the alleged severity of symptoms.
>
> Upon return to treatment in February 2015, her rheumatologist documented compliance issues, and she had very active psoriasis and psoriatic arthritis (Exhibit 17F/1-2). However, after being able to obtain Stelara injections again, by December 2015, she was doing significantly better, with only a large psoriasis plaque on her right ankle (Exhibit 17F/14). At a one-year follow-up in December 2016, her symptoms had mildly worsened, but she was still received [sic] a moderately good response to Stelara. Additionally, an examination noted tenderness in her neck and knees, but no mention of weakness or neurological issues to support the allegations of severely limited walking, standing, sitting, or lifting. Thus, in all, while the record supports some limitations due to the claimant's psoriatic arthritis, it does not support the severity alleged by the claimant.

(R. 21-22).

The ALJ accorded great weight to the opinion of the state agency medical consultant, Dr. Hughes, because he is a program physician "well-versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act and Regulations," because the opinion is consistent with the objective medical evidence and with the findings on examination, because the use of Stelera provided improvement, and because Dr. Hughes's opinions are consistent with Plaintiff's obesity.  Id. at 22.  The ALJ accorded little weight to the treating source opinion of Dr. Belcher because her "opinions did not include significant mention of objective findings in support," she is a family care provider not a specialist, her opinion is inconsistent with the objective medical evidence, the functional limitations she opined are not supported by physical examinations, and her opinion of limited employment capacity is an opinion on an issue reserved to the commissioner and is inconsistent with the record evidence.  Id. at 23.

The ALJ noted that almost two years before Plaintiff's alleged onset date, Dr. Latinis opined that Plaintiff "may need extra time to complete assignments," and the ALJ accorded this opinion little weight because it was rendered "well before the alleged onset date," was not intended by Dr. Latinis for a disability claim, is "vague and lacking specificity," and is "inconsistent with subsequent examinations of record, many by Dr. Latinis."  Id.  The ALJ also evaluated and weighed other opinions in the record, including those of other medical sources and of Plaintiff's parents.  Id. at 23-24.  He concluded by summarizing the bases for his RFC assessment:

> In sum, the above residual functional capacity assessment is supported by
> the objective medical evidence and the opinion of Dr. Hughes.  While the
> claimant has psoriatic arthritis and obesity, examinations did not show

more than moderate findings, especially when the claimant was able to receive Stelara injections and have routine office visits. The opinion of Dr. Hughes generally reflected the evidence, although the claimant's use of immunosuppressant medication supports an additional limitation in interacting with the public. In all, the evidence supports the residual functional capacity above.

(R. 24).

### D. Analysis

Plaintiff has shown no error in the ALJ's weighing of the opinions. Her argument that the opinion of a nonexamining source is entitled to the least weight does not assert error in the bases for the ALJ's weighing, but seems to ask the court to reweigh the opinions and substitute its judgment for that of the ALJ. It may not do so. Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172; see also, Bowling, 36 F.3d at 434 (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.").

Although Dr. Hughes's opinion was rendered almost two years before the ALJ's decision, the ALJ considered all the evidence and found that Dr. Hughes's opinion "generally reflected the evidence," and to the extent it did not, the ALJ added a "limitation in interacting with the public." (R. 24). It is the ALJ's responsibility to consider all the evidence and assess RFC. Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004); see also McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) ("the ALJ's RFC assessment is an administrative, rather than a medical determination."). Because RFC assessment is made based on all "the evidence in the record, not only the

medical evidence, [it is] well within the province of the ALJ." <u>Dixon v. Apfel</u>, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999). Plaintiff has not demonstrated the allegedly "stale" opinion of Dr. Hughes led to an erroneous RFC assessment.

Plaintiff's argument that the limitations opined by Dr. Hughes were due only to anemia, obesity, and a compromised immune system, and are inconsistent with the ALJ's finding of limitations due to severe psoriatic arthritis, misunderstands both the opinion of Dr. Hughes and the ALJ's decision. As Plaintiff's Brief suggests, Dr. Hughes explained that his exertional limitations were based on a history of anemia (R. 98), that his postural limitations were based on obesity, <u>id.</u>, and that his environmental limitations were based on both a compromised immune system and obesity. <u>Id.</u> at 99. However, Dr. Hughes also noted "see below," and included an "Additional Explanation" for his RFC assessment. <u>Id.</u> (bolding omitted). In that explanation, Dr. Hughes noted, among other things, "joint pains and open lesions keep her awake at night, has problems with shoes and jeans, … has to soak socks to get them off, … shaving is hard due to skin lesions." <u>Id.</u> He noted Dr. Belcher's reports of pain in joints and back, and scaly plaques on Plaintiff's feet. <u>Id.</u> He also noted that inflammatory arthritis was Plaintiff's "Primary," "Severe" medically determinable impairment (R. 96), and that he had considered Listing 14.09, "Inflammatory Arthritis." <u>Id.</u> at 97. There can be no doubt that Dr. Hughes considered Plaintiff's psoriatic arthritis, and included limitations from it in his opinions. As for the ALJ's decision, Plaintiff recognizes that the ALJ found she has psoriatic arthritis which is a "severe" impairment within the meaning of the Act and regulations (R. 17), but fails to acknowledge that, as did Dr. Hughes, the ALJ noted that "[a]s for

psoriatic arthritis, I have evaluated it according to listing 14.09, inflammatory arthritis." Id. at 18. Plaintiff has not shown an unexplained, "fatal," inconsistency between the RFC assessed by the ALJ and the opinion of Dr. Hughes.

Although Dr. Belcher's opinion that Plaintiff is capable of less-than-sedentary work is consistent in at least a broad sense with Dr. Latinis's earlier opinion that Plaintiff "may need extra time to complete assignments" (R. 719), and although treating physicians' opinions are generally worthy of deference, those facts do not negate the ALJ's reasons for discounting the physicians' opinions. Plaintiff's complaint that the ALJ addressed none of the regulatory factors for weighing medical opinions is belied by the ALJ's acknowledgment that Dr. Belcher and Dr. Latinis are treating physicians, and Dr. Hughes is a nonexamining physician, his consideration of the physicians' specialties, and his consideration of consistency. Moreover, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300). That standard is clearly met here. Plaintiff has shown no error in the ALJ's evaluation of the medical opinions.

## IV.     Step Four

Plaintiff claims error at step four of the sequential evaluation process, claiming both that she did not perform the job of a reservation clerk long enough to qualify as past relevant work and that the ALJ did not make specific findings at step four regarding the physical and mental demands of that work. (Pl. Br. 17-18). The Commissioner does not

argue that the ALJ's step four findings regarding past relevant work were proper, but instead argues that "because the ALJ's step five finding is sufficient to find Plaintiff was not disabled, Plaintiff's arguments about step four are of no moment." (Comm'r Br. 13) (citing Murrell v. Shalala, 43 F.3d 1388, 1390 (10th Cir. 1994) ("Since the unchallenged step-five finding is, by itself, a sufficient basis for the denial of benefits, plaintiff's success on appeal is foreclosed—regardless of the merit of his arguments relating to step four."). Plaintiff cites this court's opinion in Thompson v. Colvin, No. CIV. A. 14-2019-JWL, 2015 WL 773300, at *5 (D. Kan. Feb. 24, 2015), for the proposition that the ALJ's alternative finding cannot save the decision below. (Reply 1).

The court agrees with the Commissioner, however, that even if the ALJ here committed error at step four, his alternative finding at step five renders the step four error harmless. E.g. Murrell, 43 F.3d at 1390. Plaintiff's appeal to Thompson does not change that result. In Thompson, the ALJ also erred at step five because he used the grids to direct a finding even though the claimant's RFC included non-exertional limitations. Thompson, 2015 WL 773300, at *5. Here, although the ALJ's RFC includes non-exertional limitations, the ALJ did not use the grids (Medical-Vocational Guidelines) to direct a finding. The step four error is harmless.

## V.     Step Five

As a final matter, the court addresses Plaintiff's claim that the ALJ erred at step five because he relied on VE testimony which is inconsistent with the DOT. She points out that the ALJ found Plaintiff should have no "in-person interaction with the general public," and argues that the photocopy machine operator job "requires the ability to

receive payment for duplicate copies, which, of course, would be from the public." (Pl. Br. 19) (citing R. 19). She argues that the error was compounded because the ALJ did not seek or provide a reasonable explanation for this apparent conflict as required by SSR 00-4p. Id. The Commissioner argues that interaction is not required by the plain text of the job description, and thus, the ALJ did not err. (Comm'r Br. 13). She argues that in any case the other representative jobs testified by the VE and relied upon by the ALJ include 153,000 jobs in the national economy, rendering any error in relying on the job of photocopy machine operator harmless. Id. In her Reply Brief, Plaintiff argues that the VE did not reduce the number of photocopy machine operator jobs available to the hypothetical individual such as plaintiff, to account for jobs that did not require interaction with the public, leaving her testimony unreliable. (Reply 2). She also argues that the determination whether a particular number of available jobs in the economy is a significant number is a factual determination reserved to the Commissioner, and the court should therefore decline to make the determination whether the remaining 153,000 jobs is a significant number in the first instance. Id. at 2-3.

As Plaintiff's argument suggests, the Commissioner published SSR 00-4p, effective December 4, 2000. West's Soc. Sec. Rep. Serv., Rulings, 242 (Supp. 2018). In SSR 00-4p, the Commissioner established a policy interpretation for the use of VE testimony and "Other Reliable Occupational Information in Disability Decisions." Id. at 243. In the ruling, the Commissioner placed two duties on the ALJ. First, the ALJ must "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs ... and information in the Dictionary of Occupational Titles

(DOT), including its companion publication, the Selected Characteristics of Occupations

Defined in the Revised Dictionary of Occupational Titles (SCO)." Id. (emphasis added).

Second, the ALJ was given the duty to "[e]xplain in the determination or decision

how any conflict that has been identified was resolved." Id. Ruling 00-4p places the

affirmative responsibility on the ALJ to "[a]sk the VE . . . if the evidence he or she has

provided conflicts with information provided in the DOT," and where VE "evidence

appears to conflict with the DOT, ... [to] obtain a reasonable explanation for the apparent

conflict." Id. at 246.

The record reveals the ALJ met his affirmative responsibilities under the Ruling.

He asked the VE, "Has your testimony been consistent with the Dictionary of

Occupational Titles, Ms. Hastert?" (R. 64). In response to the ALJ's inquiries, the VE

explained that her testimony was consistent with the DOT but that, based on her

experience in evaluation of workers and in job placement, she had supplemented

information "regarding issues not specifically addressed by the DOT such as occupations

that would not require public in-person contact attendance." Id.

Moreover, as the Commissioner argues, the DOT job description (the Body of the

Definition) for a photocopying machine operator does not require interaction with the

public. The Body of the Definition of a photocopying machine operator provides:

> Tends duplicating machine to reproduce handwritten or typewritten matter:
> Places original copy on glass plate in machine. Places blank paper on
> loading tray. Sets control switch for number of copies. Presses button to
> start machine which transfers image of original copy onto blank paper by
> photographic and static electricity process. May clean and repair machine.
> May receive payment for duplicate copies. Important variables may be
> indicated by trade name of machine tended.

DICOT 207.685-014, 1991 WL 671745.

The DOT explains the "Parts of the Occupational Definition," wherein the "Body of the Definition" contains the "Lead Statement," the "Task Element Statements," and "'May' Items." Dict. of Occup. Titles, (4th Ed., Rev. 1991), available online at https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTPARTS.HTM, last visited January 16, 2019. The DOT explains that the lead statement in the body of the definition follows the industry designation and alternate title (if any). Id. It provides an overview of the occupation, and is followed by a colon. Id. Thereafter appear the task element statements which "indicate the specific tasks the worker performs to accomplish the overall job purpose described in the lead statement." Id. The "may" items "describe duties required of workers in this occupation in some establishments but not in others. The word "May" does not indicate that a worker will sometimes perform this task but rather that some workers in different establishments generally perform one of the varied tasks listed." Id. Therefore, the task element statements and the "may" items (if required by a particular establishment) contain the tasks required of a particular job.

Thus, it becomes clear that although the Body of the Definition for a photocopying machine operator states that an individual who performs that job "May receive payment for duplicate copies," the job does not require it, and it is only required in certain establishments. Perhaps recognizing that fact, in her Reply Brief Plaintiff argued that the VE did not reduce the number of photocopy machine operator jobs available to the hypothetical individual such as plaintiff, to account for jobs that did not require interaction with the public--leaving her testimony unreliable. (Reply 2). However,

Plaintiff's argument is not supported by the record. In his first hypothetical, the ALJ specified that the hypothetical "individual should have no in-person interaction with the general public." (R. 59). It was in response to this hypothetical that the VE testified that such an individual could perform the job of a photocopy machine operator with 150 jobs in Kansas and 20,000 jobs nationally. Id. at 60. The VE specifically testified that she had supplemented the DOT information from her personal vocational experience. Plaintiff has shown no error in the VE testimony, and provides no authority for the proposition that the VE did not reduce the number of positions available for a person such as Plaintiff from the "raw" data available in vocational publications. As the Eighth Circuit has cautioned, "a claimant's 'reliance on the DOT as a definitive authority on job requirements is misplaced' because 'DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range.'" Page v. Astrue, 484 F. 3d 1040, 1045 (8th Cir. 2007) (quoting Wheeler v. Apfel, 224 F.3d 891, 897 (8th Cir. 2000). The VE testified as to the number of jobs available.

Plaintiff has shown no reversible error in the Commissioner's final decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated January 16, 2019, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

27